IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **LISA MARIE SMITH** | § § § § |
| **Plaintiff,** | § § § |
| v. | § § CIVIL ACTION NO. _____ |
| **SWEENY INDEPENDENT SCHOOL DISTRICT, AMY POPE, AND GERALD NIXON** | § § § § § |
| **Defendants.** | § § § § |

**PLAINTIFF'S COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Lisa Marie Smith ("Plaintiff" or "Smith") files this Complaint against Sweeny Independent School District, Amy Pope and Gerald Nixon (collectively, "Defendants"), showing as follows:

**SUMMARY**

1. Smith brings claims against Sweeny Independent School District ("SISD"); Amy Pope ("Pope"), Executive Director of Curriculum, Compliance & Special Programs for SISD, in her individual capacity; and Gerald Nixon ("Nixon"), Director of HR/PR for SISD, in his individual capacity. Smith alleges against SISD claims of harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and discriminatory termination and failure to accommodate under the Americans with Disabilities Act of 1990, as amended ("ADAAA"). Smith brings claims against SISD and the individual defendants–Pope and Nixon–for retaliatory termination under the Family and Medical Leave Act of 1993 ("FMLA").

2. Smith was sexually harassed by former Superintendent Randy Miksch of SISD. This pattern of ongoing sexual harassment was severe and pervasive, creating a hostile work environment for Smith.

3. Many SISD employees and members of the SISD Board of Trustees ("Board") knew and/or should have known of this relationship and Miksch's harassment. Smith complained about Miksch to supervisors and/or managers of SISD. Yet, neither SISD nor its Board took appropriate action to address Smith's complaints or stop the harassment, either during the pendency of the relationship or while he continued to pursue her after the end of the affair.

4. Smith's employment with SISD was involuntarily terminated in July or August of 2016 (exact date unknown). This termination was in retaliation for her having complained about Miksch's sexual harassment.

5. Additionally, and/or as an alternative claim, the termination of Smith's employment violated the FMLA. Smith's employment was terminated after she took a qualifying leave of absence under the FMLA. After Smith said she could not yet return to work in response to an order from Pope requiring her immediate return upon the expiration of her FMLA, her employment was terminated. Pope said it would not be fair to reinstate Smith to her old position held by a temporary employee. Her termination was in retaliation for her having taken FMLA.

6. Additionally and/or as an alternative claim, Smith's termination violated the ADAAA. Smith has a known disability, multiple sclerosis. She informed Miksch, Pope and Nixon, *inter alia*, that she needed a reasonable accommodation to allow her to continue working for SISD. SISD did not offer her a reasonable accommodation to allow her employment with the school district to continue, and, thereafter, her employment was terminated.

## JURISDICTION AND VENUE

7. Plaintiff's claims arise under Title VII, the ADAAA and the FMLA.

8. Plaintiff has exhausted the requisite administrative requirements to bring this lawsuit. Smith completed an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC") on October 13, 2016, describing, in her own words, the relationship with Miksch, as well as the "unwanted pursuing of relationship," as well as her disability. **Exhibit 1.** Miksch's last attempt to have physical contact with Smith was on or about December 16, 2015, the date of the office holiday party. She filed her charge of discrimination with the EEOC on October 14, 2016. **Exhibit 2.** She marked disability discrimination only. Nonetheless, the Intake Questionnaire was sufficient to state a timely claim of sexual harassment due to its description of the relationship with Miksch. Furthermore, Miksch continued his harassment by driving by Smith's house when he had no reason to be driving on the dead-in street on which she resides in a rural area. He did this at his usual time (between 4 a.m. and 5 a.m.), the time he would go to her house when they were having an affair. On information and belief, Smith observed Miksch doing this on four or five occasions in 2016, including after February 1, 2016 (less than 300 days prior to the filing of her amended charge). On November 27, Smith filed an amended charge with the EEOC, claiming sex and disability discrimination and retaliation. **Exhibit 3.**

9. Smith received her notice of right to sue on February 28, 2017. **Exhibit 4**. This lawsuit is timely filed within 90 days of the issuance of her notice of right to sue.

10. This Court has subject matter jurisdiction over this case based on federal question jurisdiction. There is federal question jurisdiction pursuant to Title VII, the ADAAA and the FMLA.

11. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1), (2) because Defendants reside in and/or have their principal place of business in the Galveston Division of the Southern District of Texas and/or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Galveston Division of the Southern District of Texas.

### III. THE PARTIES

12. Plaintiff Lisa Smith is a natural person residing in Brazoria County, Texas.

13. Defendant Sweeny Independent School District is a Texas school district with its principal place of business at 1310 Elm St., Sweeny, Texas 77480, Brazoria County. Process may be served on its Superintendent.

14. Defendant Amy Pope is a resident of Sweeny, Texas, Brazoria County, and she may be served at her residence.

15. Defendant Gerald Nixon is a resident of Sweeny, Texas, Brazoria County, and he may be served at his residence.

16. The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction. For years, Defendants have done business in the State of Texas, and continue to do business in the State of Texas. The incidents giving rise to this lawsuit all occurred in the State of Texas, and in the Galveston Division of the Southern District of Texas.

17. Jurisdiction of the subject matter of this action is established in this court by ADAAA, 42 U.S.C. §§ 1343(a)(3) and (4), 12117(a), which incorporates the jurisdiction provisions in Title VII of the Civil Rights Act of 1964. This is the proper venue for this action under 42 U.S.C. §§ 2000e-5(f)(3) and 12117(a), in that the discriminatory practices alleged herein were committed within this Court's judicial district.

18. Whenever in this Complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## IV. FACTUAL BACKGROUND

19. Smith was employed by SISD for about 15 years from on or about July 2, 2001 to sometime in August or September 2016. A COBRA notice dated October 28, 2016 mailed to her later indicated that her TRS-ActiveCare coverage was terminated on October 1, 2016. Yet, Smith never received a written notice of her termination, and, thus, she is not certain when her employment was terminated (or whether she timely received her COBRA notice following a qualifying event).

20. Smith's job position was Special Programs Coordinator. She reported to various supervisors during her tenure with SISD. Her job functions remained essentially the same over the course of 15 years. As of the date of her termination, she reported to Pope. When she began her FMLA-qualifying leave, she reported to Donna Thompson, Assistant Superintendent. Prior to Donna Thompson, Smith was supervised by several Assistant Superintendents, including, but not limited to, Jim Haley, Judy Thompson and Miksch. Smith was supervised by Miksch for a period of time around 2002 to 2003 before he was promoted to Superintendent. Smith also worked closely with Business Office Manager Vincent Strother for some portion of her employment. Donna Thompson, Judy Thompson, Haley, and Strother all knew of Miksch's relationship with Smith and discussed it with her.

21. Smith's extra-marital sexual relationship with Miksch began in 2003 or 2004. Both Smith and Miksch were married at the start of the relationship. Both of their spouses eventually learned of the relationship. The relationship initially could have been called consensual, even by Smith, but after its ending in 2011, Miksch continued to relentlessly pursue Smith. It is more accurate to say that from the inception, Miksch used his position and influence to persuade Smith to enter into the relationship and to stay in it, including the performance of sexual and intimate acts on SISD premises on a frequent basis and at his insistence. He left her handwritten notes, drove by her home, and arranged to be in the same areas at work with her. He continued to try to hug Smith and kiss her.

22. Smith complained to Donna Thompson, Judy Thompson, Haley and Strother about Miksch's relationship with her and his pursuit of her. She expressed concerns to one or more of them about how the relationship reflected on her job performance and her as a person, and discussed Miksch's taking advantage of her. During or around December 2015, Donna Thompson asked Smith to file a grievance with the Board about Smith's relationship with Miksch. Donna Thompson told Smith that Miksch had taken advantage of Smith. Donna Thompson also told Smith that Donna Thompson had reported the relationship to the Board President at that time, Glen Garrison, but he said he needed first-hand evidence to conduct an investigation. Donna Thompson and Strother were upset that Smith did not go to the Board then (fall of 2015). On information and belief, there were others who reported the harassment to the Board.

23. In January 2016, Smith took a qualifying leave of absence under the FMLA to care for her father. She was subsequently approved for FMLA for her own serious health condition, which was multiple sclerosis and related conditions. Her FMLA leave ended on or about April 8, 2016. Smith was told by Pope–her supervisor at that time–that she had to be in her seat

immediately—the next day—or she would lose her position. Pope refused to hold Smith's position open until she received a release from her treating physician. Smith received a letter from Nixon indicating that a brief extension of her leave was not going to be allowed and that her position would terminated.

24. In response to Pope's demand and Nixon's letter, Smith requested an in-person meeting, which occurred on or about April 27, 2016. She met with Miksch, Nixon, Janet Slaughter (Chairman of Sick Leave Bank) and Jackie Hornback (Payroll) to discuss her concerns about losing her employment. She asked that Pope not be included because Pope became her supervisor only while she was on leave, and she sensed hostility from Pope in their phone call. Smith asked about possibly being placed in a different position once her doctor released her. Smith explained her disability and the limitations that multiple sclerosis was causing her—such as fatigue, bladder function issues, insomnia and memory issues. Smith is substantially limited in one or more major life activities, including sleep and working. In 2015, when supervised by Donna Thompson, Smith explained some of her needed accommodations, and Thompson somewhat accommodated them on an informal basis.

25. At the conclusion of the meeting, she was *not* told her employment was terminated then or would be terminated. She was advised by Slaughter to apply for paid leave from SISD's sick bank, a bank to which most SISD employees contributed for unusual illnesses. Smith applied for 35 days of sick leave from the bank.

26. Although she was advised to apply, on or about May 11, 2016, her request for sick bank leave was denied without any explanation. Despite her appealing to Nixon (who became Interim Superintendent at some point during the time period relevant to this lawsuit), her sick bank leave request was never approved. She also was never provided a reason. Nixon did not return

her calls or respond to her e-mails to explain why her request was denied; neither did Miksch nor the Board President, Garrison.

27. The exact date of her termination is unknown because Smith was not informed of her termination date. She only learned of it on or after an August 17, 2016 medical appointment, when the medical provider called to confirm her benefits and an SISD employee told the provider that Smith was not covered under SISD benefits any longer. To date, Smith has not received anything in writing from SISD indicating her exact termination date or the reason for her termination. She also never received anything in writing explaining the reason for the denial of her request for leave from the sick bank.

28. Smith filed two grievances on October 11, 2016, one against Miskch and one against the Board. In her October 11 grievance against Miksch, she complained about the sexual harassment by Miksch and the Board's failure to intervene.

## V. COUNT ONE – ADAAA CLAIMS OF DISCRIMINATORY TERMINATION AND FAILURE TO ACCOMMODATE

29. Plaintiffs adopt by reference all of the facts set forth above. *See* FED. R. CIV. P. 10(c).

30. At all times relevant herein, Defendant SISD has been an employer as defined by the ADAAA, 42 U.S.C. §12111(5)(A), in that SISD is engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in 2016.

31. Smith was disabled as defined by the ADAAA, due to her multiple sclerosis and its substantial limitations on one or more major life activities.

8

32. Smith could perform her essential job functions with reasonable accommodations from SISD (if not her position, then another available one for which she was qualified with or without reasonable accommodations).

33. The ADAAA requires employers to engage in an interactive process with individuals with disabilities to evaluate how their conditions may be accommodated. Defendant SISD failed to engage in an interactive process with Smith to determine how SISD could accommodate Smith's condition, in violation of the ADAAA.

34. SISD's refusal to provide or allow reasonable accommodations to Smith's disability, such as extending her leave or allowing other accommodations to allow her to perform the essential functions of her job or another job for which she was qualified, violated the ADAAA.

35. Further, SISD's intentional termination of Smith because of her disability violated the ADAAA. SISD fired Smith because it believed she would need reasonable accommodations.

36. In the alternative, Defendant SISD's conduct was done pursuant to a policy or practice that has a discriminatory effect on Smith as a disabled person by causing a disparate impact on Smith and other disabled persons.

37. Smith is a qualified person within the meaning of 42 U.S.C. §12111(8) because she can, with reasonable accommodation, perform the essential functions of her prior job or other employment she sought with SISD.

38. The discriminatory action of Defendant SISD has caused and will continue to cause Smith to suffer losses of earnings.

39. As a further proximate result of Defendant SISD's unlawful and intentional discriminatory actions against Smith, she has suffered emotional pain, humiliation, mental anguish, loss of enjoyment of life and emotional distress.

40. Defendant SISD's violations of the ADAAA constituted gross, wanton, reckless and/or intentional violations of her rights under the ADAAA, entitling Smith to punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar misconduct.

### VI. COUNT TWO – TITLE VII SEXUAL HARASSMENT

41. Plaintiffs adopt by reference all of the facts set forth above. *See* FED. R. CIV. P. 10(c).

42. Miksch's pursuit of Smith after their extra-marital work affair ended violated Title VII. His conduct constituted a hostile work environment based on her gender (female) and which was severe and pervasive. *See* 42 U.S.C. §2000e-2.

43. Miksch's conduct constituted a violation of Title VII. The harassment caused her substantial harm in the form of loss of pay and benefits and compensatory damages, including severe emotional distress.

### VII. COUNT THREE – TITLE VII RETALIATION

44. Plaintiffs adopt by reference all of the facts set forth above. *See* FED. R. CIV. P. 10(c).

45. Smith complained to Assistant Superintendents and the Business Office Manager about Miksch's affair with her and his continued pursuit of her.

46. The termination of her employment occurred soon after those complaints were made and because of those complaints—a situation the Board wished to ignore or chose to disbelieve. Smith also was denied sick bank leave as a further act of retaliation.

47. This Title VII violation caused Smith damages in the form of lost pay and benefits and compensatory damages.

### VIII. COUNT FOUR – RETALIATORY TERMINATION UNDER FMLA

48. Plaintiffs adopt by reference all of the facts set forth above. *See* FED. R. CIV. P. 10(c).

49. SISD qualifies as an "employer" as that term is defined in the FMLA, 26 U.S.C. § 2612(1). Additionally, Pope and Nixon qualify as an "employer" as that term is defined in the FMLA.

50. Smith was eligible for and took a qualifying leave of absence under the FMLA.

51. Pope and Nixon denied her restoration to the same or equivalent position as prescribed in the FMLA.

52. Smith's termination upon her return from FMLA leave was in retaliation for her having taken this leave. 29 U.S.C. § 2615(a)(2). There is close temporal proximity to Smith's FMLA leave and the decision to terminate her employment. Further, she was denied sick bank leave in retaliation for her having taken FMLA leave.

53. As a result of the termination of her employment, Smith has incurred, and is now incurring, a loss of wages and continuing medical expenses, all within the meaning of the FMLA, 29 U.S.C. § 2617(a), in an amount to be proved at trial. These costs include, without limitation, lost wages and medical expenses from the date of termination, back pay from the effective date of termination, and lost employment benefits from the date of termination, the loss of front pay as of the date of this Complaint, any interest on the amount thereon as provided in the FMLA, 29 U.S.C. § 2617, and attorneys' fees.

54. All Defendants are liable to Smith under the FMLA.

### IX. JURY DEMAND

55. Plaintiffs demand a jury trial.

## X. DAMAGES AND PRAYER

Plaintiff requests that the Court issue a citation for Defendants to appear and answer, and that Plaintiff be awarded a judgment against Defendants for the following:

a. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act, Title VII of the Civil Rights Act and the Family and Medical Leave Act;

b. Enjoining and permanently restraining these violations of law;

c. Awarding actual damages in the amount of back pay and front pay;

d. Awarding compensatory damages for humiliation, damages to her reputation, mental and emotional distress, and pain and suffering;

e. Awarding punitive damages;

f. Awarding pre-judgment and post-judgment interest;

d. Awarding Court costs;

e. Awarding reasonable attorneys' fees; and

f. Awarding all other relief to which Plaintiff is justly entitled.

Respectfully submitted,

By: */s/ Karla Evans Epperson*
Karla Evans Epperson
Attorney-in-Charge
State Bar No. 24002067
Southern District ID 21972
karla@keelawtx.com
6629 Brompton Rd.
Houston, TX 77005
Telephone: (713) 775-8785

**ATTORNEY FOR PLAINTIFF**