IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **LISA MARIE SMITH**<br><br>**Plaintiff,**<br><br>v.<br><br>**SWEENY INDEPENDENT SCHOOL DISTRICT**<br><br>**Defendant.** | § § § § § § § § § § § § § § § § § § CIVIL ACTION NO. 3:17-CV-00123 |

## PLAINTIFF'S AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Lisa Marie Smith ("Plaintiff" or "Smith") files this Amended Complaint against Sweeny Independent School District ("SISD" or "Defendant'), showing as follows:

## SUMMARY

1.  Smith alleges against SISD claims of harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"); discriminatory termination and failure to accommodate under the Americans with Disabilities Act of 1990, as amended ("ADAAA"); and retaliatory termination under the Family and Medical Leave Act of 1993 ("FMLA").

2.  Smith was sexually harassed by former Superintendent Randy Miksch of SISD during a relationship that was initially consensual, but became unwanted sexual harassment when Miksch subjected Smith to unwanted sexual acts and continued to relentlessly pursue Smith after she ended the relationship. This ongoing sexual harassment was severe and pervasive, creating a hostile work environment for Smith.

3. Many SISD employees and members of the SISD Board of Trustees ("Board") knew and/or should have known of this relationship and Miksch's harassment. Smith complained about Miksch to supervisors and/or managers of SISD. Yet, neither SISD nor its Board took appropriate action to address Smith's complaints or stop the harassment, either during the relationship or while he continued to pursue her.

4. On information and belief, Smith's employment with SISD was involuntarily terminated in July or August of 2016 (exact date unknown). This termination was in retaliation for her having complained about Miksch's sexual harassment.

5. Additionally, and/or as an alternative claim, the termination of Smith's employment violated the FMLA. Smith's employment was terminated shortly after she took a qualifying leave of absence under the FMLA. When Smith said she could not return to work in response to a brusque order from Pope requiring her immediate return upon the expiration of her FMLA, her employment was terminated. The termination was in retaliation for her having taken FMLA.

6. Additionally, and/or as an alternative claim, Smith's termination violated the ADAAA. Smith has a known disability, multiple sclerosis. She informed Miksch, Pope and Nixon, *inter alia*, that she wanted a reasonable accommodation to allow her to continue working for SISD. She was terminated because of her known disability. SISD neither engaged in the interactive process required by the ADAAA nor offered Smith a reasonable accommodation to allow her employment with the school district to continue.

## JURISDICTION AND VENUE

7. Plaintiff's claims arise under Title VII, the ADAAA and the FMLA.

8. Smith has exhausted the requisite administrative requirements to bring this lawsuit. Miksch's last attempt to have physical contact with Smith was on or about December 16, 2015, on

or about the date of a work holiday party. Smith completed the Intake Questionnaire provided by the Equal Employment Opportunity Commission ("EEOC") on October 13, 2016, describing, in her own words, the relationship with Miksch, as well as the "unwanted pursuing of relationship," and her disability. **Exhibit 1.** Miksch continued his harassing behavior by driving by Smith's house when he had no reason to be driving on the rural, dead-in street on which she lives. He did this at in the early morning hours (between 4 a.m. and 5 a.m. approximately), the same timeframe when he went to or drove by her house in prior years. Smith observed Miksch driving by her house on at least four or five occasions in 2016, including after February 1, 2016, which would be within the 300-day period prior to the filing of her charge. She filed her first charge of discrimination with the EEOC on October 14, 2016. **Exhibit 2.** She marked disability discrimination only. Nonetheless, the Intake Questionnaire was sufficient to state a timely claim of sexual harassment due to its description of the relationship with Miksch. On November 27, Smith filed an amended charge with the EEOC, stating claims of sex and disability discrimination and retaliation. **Exhibit 3.**

9.   Smith received her notice of right to sue on February 28, 2017. **Exhibit 4**. This lawsuit is timely filed within 90 days of the issuance of her notice of right to sue.

10.   This Court has subject matter jurisdiction based on federal question jurisdiction, pursuant to Title VII, the ADAAA and the FMLA. *See* 29 U.S.C. § 2601 et seq.; 29 U.S.C. § 2617, 28 U.S.C. § 1331.

11.   Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1), (2) because Defendant has its principal place of business in the Galveston Division of the Southern District of Texas and/or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Galveston Division of the Southern District of Texas.

## III. THE PARTIES

12.   Plaintiff Lisa Smith is a natural person residing in Brazoria County, Texas.

13.   Defendant Sweeny Independent School District is a Texas school district with its principal place of business at 1310 Elm St., Sweeny, Texas 77480, Brazoria County. Service of process has been effected.

14.   The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction. For years, Defendant has done business in the State of Texas, and continues to do business in the State of Texas. The incidents giving rise to this lawsuit all occurred in the State of Texas, and in the Galveston Division of the Southern District of Texas.

15.   Jurisdiction of the subject matter of this action is established in this court by ADAAA, 42 U.S.C. §§ 1343(a)(3) and (4), 12117(a), which incorporates the jurisdiction provisions in Title VII of the Civil Rights Act of 1964. This is the proper venue for this action under 42 U.S.C. §§ 2000e-5(f)(3) and 12117(a), in that the discriminatory practices alleged herein were committed within this Court's judicial district.

16.   Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## IV. FACTUAL BACKGROUND

17.   Smith was employed by SISD for 15 years from on or about July 2, 2001 to sometime in August or September 2016. A COBRA notice dated October 28, 2016 mailed to her

later indicated that her TRS-ActiveCare coverage was terminated on October 1, 2016. Yet, Smith never received a written notice of her termination, and, thus, she is not certain of the exact date when her employment was terminated.

18. Smith's job position was Special Programs Coordinator. She reported to various supervisors during her tenure with SISD, but her job functions remained essentially the same. As of the date of her termination, she reported to Pope. When she began her FMLA leave, she reported to Assistant Superintendent Donna Thompson. Prior to Donna Thompson, Smith was supervised by several Assistant Superintendents, including, but not limited to, Jim Haley, Judy Thompson and Miksch. Smith was supervised by Miksch in the 2002-2003 timeframe before he was promoted to Superintendent. Smith also worked closely with Business Office Manager Vincent Strother for some portion of her employment. Donna Thompson, Judy Thompson, Haley, and Strother all knew of Miksch's relationship with and pursuit of Smith.

19. Smith's extra-marital sexual relationship with Miksch began in 2003 or 2004. Sexual acts sometimes occurred on SISD property at Miksch's insistence. The relationship ended in 2011, but Miksch continued to relentlessly pursue Smith. He left notes on her desk calendar, sent her handwritten notes (leaving them on her desk), drove by her home, and arranged to be in the same areas at work with her. He also continued to try to hug Smith and kiss her. Even in 2016 he continued to drive by her house, which is in a rural area on a dead-end street. Both Smith and Miksch were married at the start of this relationship. Both of their spouses ultimately learned of the relationship, resulting in its demise.

20. Smith complained to Donna Thompson, Judy Thompson, Haley and Strother about Miksch's relationship with her and his pursuit of her. She expressed concerns to one or more of them about how the relationship reflected on her job performance and her as a person, and

5

discussed Miksch's taking advantage of her. During or around December 2015, Donna Thompson asked Smith to file a grievance with the Board about Smith's relationship with Miksch. Donna Thompson told Smith that Miksch had taken advantage of her. She also told Smith that she (Thompson) had reported this to the then-Board President, Glen Garrison, but he said he needed first-hand evidence to initiate an investigation. Donna Thompson and Strother were upset that Smith did not go to the Board at that time. On information and belief, there were others who reported the harassment to the Board. The Board took no action.

21. In January 2016, Smith took a qualifying leave of absence under the FMLA to care for her father. She was subsequently approved for FMLA for her own serious health condition, multiple sclerosis and related conditions. Her FMLA leave ended on or about April 8, 2016. In a phone call Pope told Smith that she had to be in her seat the "next day" or she would lose her job. Pope refused to hold Smith's position open for a brief extension. As of the date of that call, Pope's supervisor was Miksch.

22. In response to Pope's demand, Smith requested an in-person meeting on or about April 27. She met with Miksch, Nixon, Janet Slaughter (Chairman of Sick Leave Bank) and Jackie Hornback (Payroll) to discuss her concerns about losing her employment. She asked about possibly being placed in a different position. Smith explained her disability and the limitations that multiple sclerosis was causing her—fatigue, bladder dysfunction, insomnia, and others. Smith is substantially limited in one or more major life activities, including sleep and working.

23. At the conclusion of the meeting she was not told her employment was terminated. Instead, she was advised by Slaughter to apply for paid leave from SISD's sick bank, a bank to which most SSD employees contributed for unique situations, such as Smith's condition. This

would have allowed a brief paid extension of Smith's leave. Smith followed Slaughter's recommendation and applied for 35 days of sick leave from the bank.

24. Although she was advised by Slaughter to apply for this paid leave, on or about May 11, her request was summarily denied without any explanation. Despite her appealing to Nixon (who became Interim Superintendent during the timeframe relevant to this lawsuit), her sick bank leave request was not approved. Nixon did not return her calls or respond to her e-mails explaining why the request was denied; neither did Miksch or the Board President, Garrison. Even if SISD had not wanted to provide her the requested sick leave, it certainly could have extended her unpaid leave for a brief time during the school district's summer break.

25. The exact date of her termination is unknown because Smith was not informed of her termination date. She only learned of it on or about August 17, 2016, at a medical appointment, when the medical provider called to confirm her benefits and an SISD employee told the provider that Smith was not covered under SISD benefits. To date, Smith has not received anything in writing from SISD indicating her exact termination date or the reason for her termination. She also never received anything in writing explaining the reason for the denial of her request for leave from the sick bank. The failure to provide her either of these evidences SISD's discriminatory and retaliatory intent.

26. Smith filed two grievances on October 11, 2016, one against Miksch and one against the Board. In her October 11 grievance against Miksch, she complained about the sexual harassment by Miksch and the Board's failure to intervene. Thus, prior to her filing her EEOC charge, SISD knew of Smith's complaint about, *inter alia*, Miksch's sexual harassment.

### V. COUNT ONE – ADAAA CLAIMS OF DISCRIMINATORY TERMINATION AND FAILURE TO ACCOMMODATE

27. Plaintiff adopts by reference all of the facts set forth above. *See* FED. R. CIV. P. 10(c).

28. At all times relevant herein, Defendant SISD has been an employer as defined by the ADAAA, 42 U.S.C. §12111(5)(A), in that SISD is engaged in an industry affecting commerce and has had 15 or more employees for each working day in each of 20 or more calendar weeks in 2016.

29. Smith is disabled as defined by the ADAAA, due to her multiple sclerosis and its substantial limitations on one or more major life activities.

30. Smith can perform her essential job functions with reasonable accommodations from SISD (and if not her position, then another available one for which she was qualified with or without reasonable accommodations).

31. The ADAAA requires employers to engage in an interactive process with individuals with disabilities to evaluate how their conditions may be accommodated. Defendant SISD failed to engage in an interactive process with Smith to determine how SISD could accommodate Smith's condition; this failure constitutes a willful violation of the ADAAA.

32. SISD's refusal to provide or allow reasonable accommodations to Smith's disability, such as extending her leave or allowing other accommodations to allow her to perform the essential functions of her job or another job for which she was qualified, violated the ADAAA. SISD's denial of her Smith's request for paid leave from a bank into which she paid also reflects SISD's willful and/or reckless disregard of the ADAAA.

33. Further, SISD's intentional termination of Smith because of her disability violated the ADAAA. SISD fired Smith because it believed she would need reasonable accommodations that it did not want to provide.

34. In the alternative, Defendant SISD's conduct was done pursuant to a leave-of-absence policy or practice that has a discriminatory effect on Smith as a disabled person by causing a disparate impact on Smith and other disabled persons.

35. Smith is a qualified person within the meaning of 42 U.S.C. §12111(8) because she can, with reasonable accommodation, perform the essential functions of her prior job or other employment available employment with SISD.

36. The discriminatory action of Defendant SISD has caused and will continue to cause Smith to suffer losses of earnings.

37. As a further proximate result of Defendant SISD's unlawful and intentional discriminatory actions against Smith, she has suffered emotional pain, humiliation, mental anguish, loss of enjoyment of life and emotional distress.

38. Defendant SISD's violations of the ADAAA constituted gross, wanton, reckless and/or intentional violations of her rights under the ADAAA, entitling Smith to punitive damages in an amount sufficient to punish Defendant and deter others from engaging in similar misconduct.

### VI. COUNT TWO – TITLE VII SEXUAL HARASSMENT

39. Plaintiff adopts by reference all of the facts set forth above. *See* FED. R. CIV. P. 10(c).

40. Miksch's ongoing pursuit of Smith before, during and after their so-called "relationship" when he controlled the terms of that relationship and dictated sexual acts and/or

physical intimacy in the workplace violated Title VII. His conduct constituted a hostile work environment based on her gender and was severe and pervasive. *See* 42 U.S.C. §2000e-2.

41. Miksch's conduct constituted a violation of Title VII. Plaintiff seeks all allowable damages for harassment under Title VII, including, without limitation, back pay, front pay and compensatory damages. Plaintiff also seeks punitive damages given that SISD's conduct was intentional, and Defendant acted recklessly or/with malice. Miksch's conduct continued for years, although SISD knew or should have known of his harassment of Smith.

### VII. COUNT THREE – TITLE VII RETALIATION

42. Plaintiff adopts by reference all of the facts set forth above. *See* FED. R. CIV. P. 10(c).

43. Smith complained to Assistant Superintendents and the Business Office Manager about Miksch's affair with her and his continued pursuit of her.

44. The termination of her employment occurred soon after those complaints were made and because of them—the SISD Board wished to ignore and chose to disbelieve the egregious conduct of Miksch.

45. Smith also was denied sick bank leave as a further act of retaliation. The denial of her request simply was nonsensical given she was encouraged to apply for it and clearly was qualified. It evidences SISD's retaliatory intent for her having complained about Miksch.

### VIII. COUNT FOUR – RETALIATORY TERMINATION UNDER FMLA

46. Plaintiff adopts by reference all of the facts set forth above. *See* FED. R. CIV. P. 10(c).

47. SISD qualifies as an "employer" as that term is defined in the FMLA, 26 U.S.C. § 2612(1).

48. Smith was eligible for and took a qualifying leave of absence under the FMLA.

49. SISD denied her restoration to the same or equivalent position as prescribed in the FMLA.

50. Smith's termination upon her return from FMLA leave was in retaliation for her having taken this leave. 29 U.S.C. § 2615(a)(2). There is close temporal proximity to Smith's FMLA leave and the decision to terminate her employment. Further, she was denied sick bank leave in retaliation for her having taken FMLA leave.

51. As a result of the termination of her employment, Smith has incurred, and is now incurring, a loss of wages and continuing medical expenses, all within the meaning of the FMLA, 29 U.S.C. § 2617(a), in an amount to be proved at trial. These costs include, without limitation, lost wages and medical expenses from the date of termination, back pay from the effective date of termination, and lost employment benefits from the date of termination, the loss of front pay as of the date of this Complaint, any interest on the amount thereon as provided in the FMLA, 29 U.S.C. § 2617, and attorneys' fees.

## IX. JURY DEMAND

52. Plaintiff demands a jury trial. The fee has been paid.

## X. DAMAGES AND PRAYER

Plaintiff requests that the Court issue a citation for Defendant to appear and answer, and that Plaintiff be awarded a judgment against Defendant for the following:

a. Declaring that the acts and practices complained of in this Complaint are in violation of Title VII, the ADAAA and the FMLA;

b. Enjoining and permanently restraining these violations of law;

c. Awarding Plaintiff actual damages in the amount of back pay and front pay;

    d.       Awarding Plaintiff compensatory damages for humiliation, damages to her reputation, mental and emotional distress, and pain and suffering;

    e.       Awarding Plaintiff punitive damages;

    f.       Awarding Plaintiff pre-judgment and post-judgment interest;

    d.       Awarding Plaintiff court costs;

    e.       Awarding Plaintiff reasonable attorneys' fees; and

    f.       Awarding all other relief to which Plaintiff is justly entitled.

Respectfully submitted,

By: */s/ Karla Evans Epperson*
Karla Evans Epperson
Attorney-in-Charge
State Bar No. 24002067
Southern District ID 21972
karla@keelawtx.com
6629 Brompton Rd.
Houston, TX 77005
Telephone: (713) 775-8785

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing document in accordance with the protocols for e-filing through the CM/ECF system in the United States District Court for the Southern District of Texas, Galveston Division, on July 21, 2017, and therefore has been served upon the following counsel for Defendant in accordance with such e-filing protocols:

James E. Byrom – *Attorney-In-Charge for Defendant*
WALSH GALLEGOS TREVIÑO RUSSO & KYLE, P.C.
10375 Richmond Ave., Suite 1357
Houston, Texas  77042
Telephone:  (713) 789-6864
Facsimile:  (713) 789-9318
E-mail:  jbyrom@wabsa.com
E-mail:  bhenshaw@wabsa.com
ATTORNEYS FOR DEFENDANT