IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LISA MARIE SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-17-0123 |
| | § | |
| SWEENY INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lisa Marie Smith, brings this action against defendant, the Sweeny Independent School District ("SISD"), for discriminatory termination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12111, et seq. ("ADA"); for retaliatory termination in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq.; and for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2, et seq. Pending before the court are Defendant SISD's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 35), Plaintiff's Response to SISD's MSJ ("Plaintiff's Response") (Docket Entry No. 39), and Defendant's Reply to Plaintiff's Response to SISD's MSJ ("Defendant's Reply") (Docket Entry No. 40). For the reasons set forth below, SISD's MSJ will be granted.

# I. Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact, and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553-2554). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence

that specific facts exist over which there is a genuine issue for trial. Id. In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075. "[T]he nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" Id. (quoting Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993)).

## II.  Undisputed Facts[1]

SISD employed Smith as Special Programs Coordinator from 2001 until August of 2016.[2]

In 2003 or 2004 Smith began an extra-marital consensual sexual relationship with Randy Miksch, SISD's Superintendent, that lasted

---

[1]See Factual Background, Plaintiff's Amended Complaint, Docket Entry No. 14, pp. 4-7; Summary Judgment Facts, Defendant's MSJ, Docket Entry No. 35, pp. 2-5 ¶¶ 4-10; and Factual Background, Plaintiff's Response, Docket Entry No. 39, pp. 9-17.

[2]Oral/Videotaped Deposition of Lisa Marie Smith ("Smith Deposition"), pp. 11:2-4, 47:20-48:3, Exhibit A to Plaintiff's Response, Docket Entry No. 39-1, pp. 6, 24-25.

until September of 2011 when Miksch's wife learned of it.[3] Miksch nevertheless continued to pursue Smith at work until at least 2014 when Betty Bartness, a friend of Miksch's son, began working near Smith's desk.[4] Thereafter Miksch would drive by Smith's house.[5]

On January 7, 2016, Smith requested and was placed on FMLA leave to care for her father who died on February 1, 2016.[6] Thereafter, effective February 2, 2016, Smith was placed on FMLA leave due to her own serious illness.[7]

When her FMLA leave expired on April 8, 2016, and Smith's doctors did not release her to return to work,[8] Smith requested a meeting with Superintendent Miksch, Assistant Superintendent of Human Resources, Gerald Nixon, and HR Specialist and Miksch's Secretary, Janet Slaughter, to discuss her employment with SISD.[9]

---

[3]Id. at 86:18-87:15, 98:19-25, pp. 40-42.

[4]Id. at 104:2-106:10, pp. 45-47.

[5]Id. at 130:7-132:8, pp. 62-64.

[6]Id. at 17:5-9, 19:5-8, pp. 9, 10. See also Notice of Placement on Family and Medical Leave, Defendant's Appendix to SISD's MSJ ("Defendant's Appendix"), pp. 58-60, Docket Entry No. 35-1, pp. 66-67.

[7]Id. at 19:9-20:5, pp. 10-11. See also Notice of Placement on Family and Medical Leave, Defendant's Appendix, pp. 61-63, Docket Entry No. 35-1, pp. 69-71.

[8]Id. at 22:23-26:8, 37:3-6, 43:11-23; Defendant's Appendix, pp. 10-11, 14, 15, Docket Entry No. 35-1, pp. 14-15, 18, 19.

[9]See April 22, 2016, email from Smith to Nixon, Exhibit 6 to Transcription of Videotaped Deposition of Janet Slaughter ("Slaughter Deposition"), Exhibit F to Plaintiff's Response, Docket Entry No. 39-6, p. 31.

The meeting was held on April 22, 2016, and at the meeting Smith requested an accommodation of six weeks additional leave, hoping that her doctors would allow her to return to work by then.[10] Smith also asked to speak with HR Specialist Jackie Hornbeck because she "wanted to apply for some type of disability either with Social Security or TRS."[11]

After the April 22nd meeting and again on April 27th,[12] Smith submitted applications for paid leave from SISD's sick leave bank -- both of which were denied.[13] When Smith asked Nixon why her requests for sick bank leave time were denied, he did not respond.[14]

In June of 2016 Smith applied for Social Security Disability Benefits and Teacher Retirement Disability, which were granted.[15]

Smith's employment ended on July 31, 2016, when her contract expired without an offer of renewal from SISD.[16]

---

[10]Smith Deposition, p. 46:10-15, Exhibit A to Plaintiff's Response, Docket Entry No. 39-1, p. 23.

[11]Id. at 50:2-6; Defendant's Appendix, p. 17, Docket Entry No. 35-1, p. 21.

[12]See Exhibit 12 to Slaughter Deposition, Exhibit F to Plaintiff's Response, Docket Entry No. 39-6, pp. 32-40.

[13]See Exhibit 13 to Slaughter Deposition, Exhibit F to Plaintiff's Response, Docket Entry No. 39-6, pp. 41-43.

[14]Transcription of Videotaped Deposition of Gerald Nixon ("Nixon Deposition"), pp. 99:16-100:22, Exhibit G to Plaintiff's Response, Docket Entry No. 39-7, pp. 46-47.

[15]Smith Deposition, pp. 66:4-67:12, Exhibit A to Plaintiff's Response, Docket Entry No. 39-1, pp. 35-36.

[16]Smith Deposition, p. 56:14-22; Defendant's Appendix, p. 18, Docket Entry No. 35-1, p. 22. See also Defendant's MSJ, Docket Entry No. 35, p. 4 ¶ 8 (stating that Smith's employment ended August 1, 2016).

On October 11, 2016, Smith filed a grievance with SISD against former Superintendent Miksch based on their long-term sexual relationship.[17]

On October 13, 2016, Smith filled out an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC"),[18] and on October 14, 2016, Smith filed with the EEOC a Charge of Discrimination against SISD based on disability.[19] On November 27, 2016, Smith filed with the EEOC an amended Charge of Discrimination against SISD based on disability, sex, and retaliation.[20]

## III. <u>Analysis</u>

SISD argues that it is entitled to summary judgment on Smith's ADA claims because Smith is unable to present evidence capable of establishing that she is a qualified individual with a disability, that SISD failed to honor Smith's request for a reasonable accommodation, or that SISD's leave policy was not uniformly and consistently applied to all employees; and that it is entitled to summary judgment on Smith's Title VII claims because Smith is

---

[17]Employee Complaint Form - Level One, Defendant's Appendix, p. 83, Docket Entry No. 35-1, p. 91.

[18]Exhibit 1 to Plaintiff's Complaint, Docket Entry No. 1-2. Although this and other exhibits are referenced in Plaintiff's Amended Complaint (Docket Entry No. 14), they are only attached to Plaintiff's Original Complaint (Docket Entry No. 1).

[19]Exhibit 2 to Plaintiff's Complaint, Docket Entry No. 1-3. <u>See also</u> Defendant's Appendix, p. 97, Docket Entry No. 35-1, p. 107.

[20]Exhibit 3 to Plaintiff's Complaint, Docket Entry No. 1-4. <u>See also</u> Defendant's Appendix, p. 84, Docket Entry No. 35-1, p. 92.

unable to establish a prima facie case of sexual harassment under Title VII. SISD also argues that Smith is unable to establish a prima facie case of retaliation under the ADA, Title VII, or the FMLA. Smith argues in response that SISD is not entitled to summary judgment on her ADA, FMLA, or Title VII claims.

**A.    SISD is Entitled to Summary Judgment on Smith's ADA Claims**

SISD argues that it is entitled to summary judgment on Smith's ADA claims for disability discrimination because Smith was not a qualified individual with a disability, and that even if she was, SISD granted Smith's only requested accommodation, _i.e._, an additional six weeks of leave.[21] Asserting that "Smith was entitled to a reasonable accommodation of either a six-week extension of her leave or placement in another available position for which she was qualified,"[22] Smith argues that SISD is not entitled to summary judgment on her ADA claims because she was qualified for the job,[23] she suffered an adverse employment action on account of her disability when SISD "denied her requests [for a reasonable accommodation] and quit responding to her, failing to engage in the

---

[21]Defendant's MSJ, Docket Entry No. 35, pp. 6-10 ¶¶ 16-25; Defendant's Reply, Docket Entry No. 40, pp. 5-9. Although SISD also argues that it is entitled to summary judgment on plaintiff's claim for retaliation under the ADA, _see_ _id._ at 10-11 ¶¶ 26-28, plaintiff has not alleged an ADA claim for retaliation. _See_ Plaintiff's Amended Complaint, Docket Entry No. 14, pp. 8-9 ¶¶ 27-38 ("Count One — ADAAA Claims of Discriminatory Termination and Failure to Accommodate").

[22]Plaintiff's Response, Docket Entry No. 39, p. 26.

[23]_Id._ at 21-25.

required interactive process,"[24] and she has raised fact issues regarding pretext and that her disability was a motivating factor.[25]

### 1. Applicable Law

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment.'" Rodriguez v. ConAgra Grocery Products Co., 436 F.3d 468, 474 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)). Plaintiff may establish an ADA discrimination claim by using direct evidence or by using the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). See Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir. 1999). Direct evidence of discrimination "is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Rachid v. Jack In The Box, Inc., 376 F.3d 305, 310 n.6 (5th Cir. 2004). Plaintiff has not cited direct evidence of discrimination and does not argue that this is a direct evidence case. Under the McDonnell Douglas framework plaintiff may establish a prima facie case of discrimination based on disability by showing "'(1) that [s]he has a disability; (2) that [s]he was qualified for the job; [and]

---

[24]Id. at 25.

[25]Id. at 25-26.

(3) that [s]he was subject to an adverse employment decision on account of h[er] disability.'" E.E.O.C. v. LHC Group, Inc., 773 F.3d 688, 697 (5th Cir. 2014).

Discrimination includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless . . . the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).  To establish a prima facie failure-to-accommodate claim, a plaintiff must cite evidence capable of proving:  "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." Feist v. Louisiana, Department of Justice, Office of the Attorney General, 730 F.3d 450, 452 (5th Cir. 2013).

2.  Application of the Law to the Undisputed Facts

SISD does not dispute that Smith is disabled or that it knew about her alleged disability and physical limitations. At issue is whether Smith was a "qualified individual," and whether SISD failed to provide her a reasonable accommodation and/or failed to engage in the interactive process to identify a reasonable accommodation.[26]

An employee is a "qualified individual" under the ADA if she, "with or without reasonable accommodation, can perform the

---

[26]Defendant's MSJ, Docket Entry No. 35, pp. 5-10 ¶¶ 11-25; Plaintiff's Response, Docket Entry No. 39, pp. 21-25.

essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). See Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996) (per curiam) ("To avoid summary judgment on whether he is a qualified individual, [plaintiff] needs to show 1) that he could perform the essential functions of the job in spite of his disability or 2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job.").

SISD argues that Smith was not a qualified individual because "[a]n essential function for nearly every job is the ability to appear for work,"[27] and "[w]hen an employee's physician will not release them to return to work, they are not a qualified individual under the act."[28] SISD argues that Smith's "deposition testimony and doctors statements clearly indicate that she could not perform the essential functions of her job, even with reasonable accommodations, and therefore was not a qualified individual under the ADA."[29] Asserting that Smith "produced no evidence whatsoever that she would have been able to perform the essential elements of her job — or any other job — with or without reasonable accommodations,"[30] SISD argues that Smith "has failed to meet her

_____

[27]Defendant's MSJ, Docket Entry No. 35, p. 7 ¶ 18.

[28]Id. ¶ 19.

[29]Id. at 8 ¶ 21.

[30]Defendant's Reply, Docket Entry No. 40, p. 6 ¶ 9.

burden of production in response to [its MSJ] on this issue, and therefore, her ADA claim cannot survive."[31]

Smith testified at her deposition that she was unable to perform the functions of her job as Special Programs Coordinator,[32] but argues that "the controlling question is whether a brief extension of a leave of absence or job reassignment would have been reasonable accommodations for Smith."[33] Smith argues that "[t]he record clearly demonstrates that [she] asked for a brief extension of her leave of absence."[34] Smith argues that

> [i]n this case, granting [her] leave for six weeks, as she requested, would have been a reasonable accommodation. In fact, it is what Sweeny ISD offered to her (Ex. G., Nixon Dep. 90-91), but then denied without explanation. Even more troubling, her request was denied despite Sweeny ISD having previously granted paid leave from the sick bank for all requests with only two exceptions by one employee relating to an elective lap band surgery and resulting complications. (Ex. E, Sick Leave Bank Policy Produced by Sweeny ISD.) Nixon could not articulate any basis for his decision to deny Smith's appeal of the denial of her sick leave bank request. (Ex. G, Nixon Dep. at 54-55.) He did not even recall what he considered to make his decision. Id. at 99-100.

---

[31]Id.

[32]Smith Deposition, p. 34:2-3 (Smith stated, "I could not work in my capacity at work, no, in what it required of me, no."), and 60:23-61:3 ("Q. . . . Did you -- did you believe that you were capable of going back to work before -- in that time period between, say, June 1st and July 31st? A. Capable, yes. If I had had accommodations, depending on the job. Not the job that I had, I know that I couldn't have done that job."), Defendant's Appendix, pp. 13 and 19-20, Docket Entry No. 35-1, pp. 17 and 23-24.

[33]Plaintiff's Response, Docket Entry No. 39, p. 21.

[34]Id. at 23.

> He just knew that he did not respond to her requests for
> information. _Id._ . . . Nixon does not remember why a
> six-week leave was not a reasonable accommodation for
> Smith. (Ex. G, Nixon Dep. at 65.) He does not remember
> thinking "one way or the other" about whether her request
> should be granted. _Id._ at 77. **He had no opinion on the
> issue.** _Id._ at 79. He does not remember her six-week
> request coming up at their April 22 meeting. _Id._ at 94.
> But he does remember [that] granting her leave from the
> sick bank leave was discussed. _Id._[35]

Asserting that she "also asked for a different position with the
school district,"[36] Smith also argues that Nixon and Miksch
"suggested [she] might could be a teacher's aid."[37] Smith argues
that after the April 22, 2016, meeting, "no one with [SISD] reached
out to her again to discuss her requested accommodations, other
than to summarily tell her that her request for sick leave was
denied and the denial was upheld by Nixon."[38] Asserting that she
asked for reasonable accommodations, Smith argues that SISD "denied
her requests and quit responding to her, failing to engage in the
required interactive process."[39]

> (a) SISD Engaged in the Interactive Process and Granted
> Smith's Request for Six Weeks of Unpaid Leave

"'An employee who needs an accommodation because of a
disability has the responsibility of informing her employer.'"

---

[35]_Id._ at 23-24.

[36]_Id._

[37]_Id._

[38]_Id._ at 25.

[39]_Id._

<u>Griffin, Sr. v. United Parcel Service, Inc.</u>, 661 F.3d 216, 224 (5th Cir. 2011) (quoting <u>E.E.O.C. v. Chevron Phillips Chemical Co., LP</u>, 570 F.3d 606, 621 (5th Cir. 2009)).  Once an employee requests an accommodation for a disability, ADA regulations state that "it may be necessary for the [employer] to initiate an informal, interactive process" designed to identify reasonable accommodations.  29 C.F.R. § 1630.2(o)(3).  <u>See also</u> <u>Taylor v. Principal Financial Group, Inc.</u>, 93 F.3d 155, 165 (5th Cir.), <u>cert. denied</u>, 117 S. Ct. 586 (1996) ("[T]he employee's initial request for an accommodation . . . triggers the employer's obligation to participate in the interactive process of determining one.").  "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA."  <u>Cutrera v. Board of Supervisors of Louisiana State University</u>, 429 F.3d 108, 112 (5th Cir. 2005) (citing <u>Loulseged v. Akzo Nobel Inc.</u>, 178 F.3d 731, 736 (5th Cir. 1999)).  But failure to participate in an interactive process does not alone constitute a violation of the ADA.  <u>See</u> <u>Picard v. St. Tammany Parish Hospital</u>, 423 F. App'x 467, 470 (5th Cir. 2011) (per curiam) (rejecting argument that failure to engage in interactive process constitutes a per se violation of the ADA).  "'[A]n employer cannot be found to have violated the ADA when responsibility for the breakdown of the "informal, interactive process" is traceable to the employee and not the employer.'"  <u>Griffin</u>, 661 F.3d at 224.

Although Smith argues that SISD failed to engage in the interactive process, her own evidence contradicts that argument by showing that SISD officials did, in fact, meet with her to discuss her limitations and that SISD provided Smith the only accommodation that she requested, i.e., a six-week extension of unpaid leave. In pertinent part, Smith testified that after receiving an April 18, 2016, letter from SISD's Director of Human Resources, Gerald Nixon, reminding her that her FMLA leave had ended on April 8, 2016, and that unless she could be released to return to work by April 25, 2016, SISD would move forward with reassignment for her position, and he would recommend that her employment be terminated,[40] Smith asked to meet with SISD officials and did meet with them on April 22, 2016, to discuss her future with SISD.[41] At the April 22, 2016, meeting Smith discussed her limitations with SISD officials and asked them to hold a job -- her position or another position -- for her until she was able to return to work. Smith testified:

Q. Okay. On or about April 22nd, how's that, you had a meeting. Who'd you have a meeting with?

A. It was Gerald Nixon, Randy Miksch, Janet Slaughter, and at one point she brought in Jackie Hornbeck.

Q. Okay. And what -- who set up this meeting? Did you request the meeting?

---

[40]See April 18, 2016, Letter to Lisa Smith from Gerald Nixon, included in Exhibit G to Plaintiff's Response, Docket Entry No. 39-7, p. 55.

[41]Smith Deposition, pp. 45:22-46:9, Exhibit A to Plaintiff's Response, Docket Entry No. 39-1, pp. 22-23.

A.    I requested the meeting.

Q.    Okay.  And what -- why -- why did you request the meeting?

                              . . .

Q.    Okay.  What -- why did you request the -- the meeting?

A.    To see about where we stood, where I stood with the district . . . I wanted to know, because I wasn't able to return to work, am I still an employee, what is my future here, can you please hold my job open for me with a temporary until I can return basically is why I was going to ask them to please hold it for me.

Q.    Okay.  And -

A.    Or at least my job, my job.  Maybe not that position.

Q.    But --

A.    Probably not that position.

Q.    Okay.

A.    But a job with the district, because I had been there so long, I didn't want to lose my job.

Q.    Okay.  So you requested that they -- they hold a job open; not -- not necessarily your position, but -- but just have a position for you?

A.    Yes.  And I believe I asked for six weeks.

Q.    Six weeks?

A.    In hopes that the doctor would release me.

Q.    Okay.  And how did they respond?  So you asked -- or I'm sorry.  Stop.

      You asked for six weeks additional time?

A.    Yes.

Q.   Okay.  And that was on April 22nd?

A.   I believe.

Q.   Right -- that -- right --

A.   Yes.

Q.   -- around there?  Okay.  So that would put it,
     let's see, somewhere in May or maybe the beginning
     of June, I guess, the beginning of June.  So you're
     -- you're requesting until then to be able -- to be
     off work until somewhere around the beginning of
     June?

A.   Six weeks, whatever that would have been.  I don't
     know.  I didn't -- I just knew six weeks may be
     enough for my doctors to go and release me.

Q.   Okay.  And so that -- how did they respond?

A.   I don't recall exactly who said what, but they were
     talking about a different position that didn't
     require so much cognitive thought with it, numbers
     and calculations and budget information.  Something
     like a teacher's aid is what they had said.

Q.   Okay.  And so they agreed to the six -- to holding
     your job for six weeks?

A.   I don't recall them agreeing to hold the job for
     six weeks, no.  I just remember them saying that I
     could possibly do another position, like they would
     look to see what other positions that would be
     available that I possibly could do.[42]

                    .  .  .

Q.   But you asked for six weeks additional time?

A.   Yes.

Q.   And they -- nobody in the meeting said, "No, we're
     not going to do that"?

---

[42]Id. at 44:12-47:19, pp. 21-24.

A.    No.

Q.    Okay.  And, in fact, they -- they didn't fire you
      in May or June; is that correct?

A.    No.

Q.    Okay.  So they essentially held it open for the six
      weeks that you requested?

A.    They did  -- it is so not clear to me about my
      employment after that meeting.  So I'm going to say
      yes, they did, because I thought I had my job.
      Even as I went to my doctor's appointment in
      August, I hadn't been told differently.  So I
      thought that they were holding it for me.[43]


                          .  .  .

Q.    So you -- you -- you asked for the six weeks at the
      meeting?

A.    (Nodding affirmatively.)

Q.    And then those six weeks expired, which you were
      still employed?

A.    Yes.[44]

This testimony from Smith's deposition establishes that during

the April 22, 2016, meeting Smith asked SISD to hold a position

open for her for six weeks in hopes that she would be able to

return to work then, that SISD officials discussed with her the

possibility of reassigning her to a different position that would

better suit her abilities, and that SISD extended her unpaid leave

for at least the six weeks she requested.   Although Smith argues

_____

[43]Id. at 49:8-23, p. 26.

[44]Id. at 60:7-12, p. 32.

                              -17-

that following the April 22, 2016, meeting she applied for six weeks of paid leave from the district's sick leave bank and that SISD "denied her requests and quit responding to her, failing to engage in the required interactive process,"[45] Smith has failed to cite any evidence capable of establishing either that she requested six weeks of paid leave from the sick leave bank as a reasonable accommodation for her disability, or that receiving six weeks of paid leave would have constituted a reasonable accommodation because receiving six weeks of paid leave would have enabled her to perform the essential functions of her job or any other job that SISD had available.  See Turco, 101 F.3d at 1093 (defining a "reasonable accommodation" as an accommodation that would allow the employee to perform the functions of her position or another available position).  Moreover, the ADA does not require an employer to allow a disabled employee to take indefinite leave for purposes of accommodation.  See Bennett v. Calabrian Chemicals Corp., 324 F. Supp. 2d 815, 837-38 (E.D. Tex. 2004).

> (b) Plaintiff Has Failed to Cite Evidence Capable of Establishing that Reasonable Accommodations Existed

Smith argues that during that April 22, 2016, meeting, the possibility of her working in a different position was discussed,[46] and that Nixon or Miksch "suggested [she] might could be a

---

[45]Plaintiff's Response, Docket Entry No. 39, p. 25.

[46]Id. at 24.

-18-

teacher's aid."[47] Smith argues that she requested reassignment to a different position, but this argument is contradicted by her deposition testimony that when her six weeks of extended leave ended, she did not ask SISD for additional leave or for any other type of accommodation. In pertinent part Smith testified:

> Q.  . . . [D]id you have any contact between when the six weeks expired, which would have been June, six weeks that you requested, and the end of July, did you have any contact with the district?
>
> A.  I don't recall if I had any kind of contact or not.
>
> Q.  Did you call them and say, "Hey, I'm -- I'm requesting some additional leave time"?
>
> A.  No.
>
> Q.  Did you call and say -- or e-mail and ask, "Do you have a position that I can fill"?
>
> A.  No.[48]
>
>                     . . .
>
> Q.  . . . Did you -- did you believe that you were capable of going back to work before -- in that time period between, say, June 1st and July 31st?
>
> A.  Capable, yes.  If I had had accommodations, depending on the job.  Not the job that I had, I know that I couldn't have done that job.
>
> Q.  What accommodations were -- would you have needed?
>
> A.  I would have to arrive late some days.  I would need frequent restroom breaks.  Some days I would need off for doctors' appointments because I have so many doctors' appointments.  I would have had to have quite a few days off.  So it would had to have been a position that allowed for that.

[47]Id.

[48]Smith Deposition, p. 59:3-14, Exhibit A to Plaintiff's Response, Docket Entry No. 39-1, p. 31.

Q.   Did -- did you -- in that time period, did you --
did you tell anyone at the district that "here's
the accommodations I need, to you  have a job that
suits this"?

A.   No, I didn't. . . .[49]

This testimony from Smith's deposition establishes that she did not ask SISD for a different position, did not inform SISD of the accommodations that she needed in order to fill a different position, and did not identify an available position that she would have been qualified to fill.  An employee seeking reassignment to a different position as a reasonable accommodation bears the burden of showing that an available position existed, that she was qualified for the position, and that she could perform the essential duties of that position with or without accommodations. See Griffin v. United Parcel Service, Inc., 661 F.3d 216, 224 (5th Cir. 2011) (quoting Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007) ("'An employee who needs an accommodation because of a disability has the responsibility of informing her employer.'")).

3.   Conclusions

The summary judgment evidence establishes that after February 2, 2016, the date that Smith began FMLA leave for her own serious illness, she was unable to work at her previous position as Special Programs Coordinator, and that on April 22, 2016, SISD

---

[49]Id. at 60:23-61:16, pp. 32-33.

officials met with Smith to discuss her future. At the April 22, 2016, meeting, Smith requested a six-week extension of unpaid leave, and SISD officials raised the possibility that she could be reassigned to a different position as a teacher's aid. SISD continued Smith's unpaid leave not just for the six weeks that Smith requested, but until July 31, 2016, when Smith's contract expired without an offer of renewal and Smith's employment with SISD ended. Smith argues that SISD wrongfully failed to accommodate her disability and to engage in the interactive process needed to identify a reasonable accommodation, but Smith testified that she never asked SISD to extend her unpaid leave beyond the six weeks that she requested and received at the April 22, 2016, meeting, and that she never applied for any available position at SISD that she would have been qualified to fill with the accommodations she needed. This evidence establishes that SISD engaged in an interactive process to identify a reasonable accommodation and granted the only accommodation Smith requested. Because Smith fails to identify any available position at SISD that she would have been qualified to perform with or without a reasonable accommodation, the court concludes that Smith has failed to cite evidence from which a reasonable fact-finder could conclude that she was a qualified individual under the ADA. Absent evidence from which a reasonable fact-finder could conclude that a job existed to which she could have been reassigned as a reasonable accommodation, Smith has failed to raise a genuine issue of

material fact for trial on her ADA claims for discriminatory termination, failure to accommodate, and failure to engage in the interactive process. See Burch v. City of Nacogdoches, 174 F.3d 615, 622 n.11 (5th Cir. 1999) (affirming summary judgment for the defendant because the plaintiff "never agreed to or even requested a reassignment to a particular position" and "never requested clearance from his treating physician for any prospective jobs"). Accordingly, SISD's motion for summary judgment on Smith's ADA claims will be granted.

**B.  SISD is Entitled to Summary Judgment on Smith's Title VII Claims for Failure to Exhaust Administrative Remedies**

Smith has asserted Title VII claims for a sexually hostile work environment and for retaliation.[50]  Smith alleges:

40.  Miksch's ongoing pursuit of Smith before, during and after their so-called "relationship" when he controlled the terms of that relationship and dictated sexual acts and/or physical intimacy in the workplace violated Title VII.  His conduct constituted a hostile work environment based on her gender and was severe and pervasive. *See* 42 U.S.C. § 2000e-2.

41.  Miksch's conduct constituted a violation of Title VII.  Plaintiff seeks all allowable damages for harassment under Title VII . . .

. . .

43.  Smith complained to Assistant Superintendents and the Business Office Manager about Miksch's affair with her and his continued pursuit of her.

---

[50]Plaintiff's Amended Complaint, Docket Entry No. 14, pp. 9-10 ¶¶ 39-45.

44. The termination of her employment occurred soon after those complaints were made and because of them — the SISD Board wished to ignore and chose to disbelieve the egregious conduct of Miksch.

45. Smith also was denied sick bank leave as a further act of retaliation. The denial of her request simply was nonsensical given she was encouraged to apply for it and clearly was qualified. It evidences SISD's retaliatory intent for her having complained about Miksch.[51]

SISD argues that it is entitled to summary judgment on Smith's Title VII claims because Smith failed to exhaust her administrative remedies.[52] Smith responds that she timely exhausted her administrative remedies and, if not, equitable tolling should apply.[53]

In an employment discrimination case the plaintiff must exhaust all administrative remedies before pursuing her claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002) (citing Dao v. Auchan Hypermarket, 96 F.3d 787, 788-89 (5th Cir. 1996)). A plaintiff exhausts her administrative remedies when she files a timely charge of discrimination with the EEOC. Dao, 96 F.3d at 788-89 (noting that although filing a claim with the EEOC is not a jurisdictional prerequisite, it "'is a precondition to filing suit in district court'" (quoting Cruce v. Brazosport Independent School District, 703 F.2d 862, 863 (5th Cir.

---

[51]Id. ¶¶ 40-41, 43-45.

[52]Defendant's MSJ, Docket Entry No. 35, pp. 11-12 ¶¶ 29-35.

[53]Plaintiff's Response, Docket Entry No. 39, pp. 17-20.

1983))). As a general rule, discrimination victims must file a charge with the EEOC within 180 days of when the unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). In deferral states, such as Texas, an exception to this general rule applies and an individual must file a charge within 300 days of the allegedly discriminatory act. See 42 U.S.C. § 2000e-5(e)(1), 29 U.S.C. §§ 626(d) and 633(b).[54] The limitations period for filing a charge of discrimination with the EEOC starts to run from the date the discriminatory act occurs or the date that the plaintiff knows or reasonably should know of the discriminatory act. Delaware State College v. Ricks, 101 S. Ct. 498, 503-04 (1980); Merrill v. Southern Methodist University, 806 F.2d 600, 605 (5th Cir. 1986). A failure to exhaust administrative remedies is a bar to filing a lawsuit. See Hernandez v. Metropolitan Transit Authority of Harris County, 673 F. App'x 414, 416 n.1 (5th Cir. 2016) (citing Price v. Choctaw Glove & Safety Co., 459 F.3d 595, 598 (5th Cir. 2006)).

Smith filed her first EEOC charge alleging only disability discrimination on October 14, 2016.[55] Smith filed her amended EEOC alleging disability and sex discrimination, and retaliation on

---

[54]Neither party to this suit disputes that this 300-day exception applies to the instant case.

[55]Exhibit 2 to Plaintiff's Complaint, Docket Entry No. 1-3. See also Defendant's Appendix, p. 97, Docket Entry No. 35-1, p. 107.

November 27, 2016.[56]  Citing <u>Manning v. Chevron Chemical Co., LLC</u>,

332 F.3d 874, 878 (5th Cir. 2003), SISD argues that because Smith's

"amended charge alleged different facts, and raised new legal

theories it does not relate back to the original charge for

purposes of tolling the required time period."[57]  SISD argues that

because Smith's claims of sex discrimination and retaliation under

Title VII relate to events that occurred more than 300 days before

November 27, 2016, they fail as a matter of law.[58]

Generally, amendments that raise a new legal theory do not

"relate back" to an original charge of discrimination.  <u>Id.</u> (citing

<u>EEOC v. Mississippi College</u>, 626 F.2d 477, 483-84 (5th Cir. 1980)

(observing that "[b]ecause [the claimant's] allegations of racial

discrimination do not relate to or grow out of the allegations of

sex discrimination advanced in the original charge, that aspect of

the amended charge does not relate back to the time of filing of

[the] original charge")).  This rule has an important policy

justification.  One of the central purposes of the employment

discrimination charge is to put employers on notice of "the

existence and nature of the charges against them."  <u>Id.</u> (quoting

<u>EEOC v. Shell Oil Co.</u>, 104 S. Ct. 1621, 1635 (1984)).  Therefore,

---

[56]Exhibit 3 to Plaintiff's Complaint, Docket Entry No. 1-4.
<u>See also</u> Defendant's Appendix, p. 84, Docket Entry No. 35-1, p. 92.

[57]Defendant's MSJ, Docket Entry No. 35, p. 12 ¶ 32.

[58]<u>Id.</u> ¶¶ 33-35.

employees must inform their employers from the outset about their claims of discrimination. <u>Id.</u> at 878-79.

Smith argues that her "Intake Questionnaire is sufficient to constitute a charge of discrimination."[59] Citing <u>Stone v. Academy, Ltd.</u>, 156 F. Supp. 3d 840 (S.D. Tex. 2016), Smith argues that an Intake Questionnaire with more factual details than a later-filed charge can constitute a charge timely filed within the filing deadline.[60] Smith argues that treating her intake questionnaire as a charge would be consistent with the Supreme Court's directive in <u>Federal Express Corp. v. Holowecki</u>, 128 S. Ct. 1147, 1160 (2008), that "'documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies.'"[61]

When considering whether a plaintiff has adequately exhausted administrative remedies, courts in the Fifth Circuit have determined that unverified intake questionnaires submitted by pro se complainants may constitute a charge for purposes of satisfying the time limitation for filing a charge. <u>See</u> <u>Stevenson v. LaSalle Corrections Transportation, LLC</u>, No. 3:13-CV-2105, 2015 WL 11120728, *2 (N.D. Tex. April 21, 2015) (determining that an unverified questionnaire constituted a charge); <u>Wolf v. East Texas</u>

---

[59]Plaintiff's Response, Docket Entry No. 39, p. 17.

[60]<u>Id.</u> at 19.

[61]<u>Id.</u> (citing <u>Stone</u>, 156 F. Supp. 3d at 845 (quoting <u>Holowecki</u>, 128 S. Ct. at 1160).

Medical Center, 515 F. Supp. 2d 682, 688-89 (E.D. Tex. 2007) (construing questionnaire as timely charge where plaintiff later filed a charge of discrimination "concerning the same factual allegations"); Stone, 156 F. Supp. 3d at 843-45 (holding EEOC unverified intake questionnaire constituted charge of discrimination where plaintiff). In Stone the court observed that

> [t]he Fifth Circuit has recognized that an intake questionnaire that informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent is sufficient to set the administrative machinery in motion.

Stone, 156 F. Supp. 3d at 843 (citing Conner v. Louisiana Department of Health & Hospitals, 247 F. App'x 480, 481 (5th Cir. 2007)) (quoting Price v. Southwestern Bell Telephone Co., 687 F.2d 74, 78 (5th Cir. 1982) (internal quotations omitted)).

In pertinent part Smith made the following statement in response to question 5 on her Intake Questionnaire asking "What happened to you that you believe was discriminatory? Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you.":

> B.   Date: Sept. 2003-Sept. 2011
>
> Action: Relationship with Superintendent.  I have notes he left on my desk that my boss and co-worker read without my knowledge.  Unwanted pursuing of relationship.
>
> Name and Title of Person(s) Responsible: Randy Miksch, Superintendent.[62]

---

[62]Intake Questionnaire, Exhibit 1 to Plaintiff's Complaint, Docket Entry No. 1-2, p. 3.

While this information on Smith's Intake Questionnaire identified Miksch as someone who had discriminated against her, neither her statement that the alleged discrimination occurred from September 2003 to September 2011, i.e., over five years before October 13, 2016, the date she completed the Intake Questionnaire, nor her description of the allegedly discriminatory conduct provided any information about acts that occurred within the 300-day charge filing period that would have enabled the EEOC to issue an official notice of charge to the respondent to set the administrative machinery in motion. See Stone, 156 F. Supp. 3d at 843.

Alternatively, Smith argues that equitable tolling should be applied by this court because "Smith was misled by the EEOC about her sexual harassment charge."[63] In support of this argument Smith cites her own declaration in which she states:

> I went to the Houston office of the [EEOC] on October 13, 2016. I think I took the intake questionnaire home with me and filled it out. I had to go back on October 14. I met with a female employee, Marina Guerra. She looked at my intake questionnaire. I even showed her the notes and letters Randy sent me. She read them, but she told me that she did not think that I should claim sexual harassment. I do not remember her exact words, but it was essentially because of the timing -- the deadline to file a charge.[64]

Citing Manning, 332 F.3d at 880, Smith argues that equitable tolling should apply because the EEOC misled her not to mark the

---

[63]Plaintiff's Response, Docket Entry No. 39, p. 17.

[64]Smith Declaration ¶ 10, Exhibit D to Plaintiff's Response, Docket Entry No. 39-4, p. 4.

box for harassment because the affair with Miksch ended in 2011.
Smith asserts that she had no idea she should mark "continuing
action" or that she should push back on the EEOC's advice because
Miksch pursued her for years after the affair ended.[65]

In <u>Manning</u> the Fifth Circuit stated that "[w]e apply equitable
tolling when an employee seeks information from the EEOC, and the
organization gives the individual *incorrect information* that leads
the individual to file an untimely charge." 332 F.3d at 881
(citing <u>Ramirez v. City of San Antonio</u>, 312 F.3d 178, 184 (5th Cir.
2002)). Smith states that the EEOC employee did not think that she
should claim sexual harassment because of the deadline for filing
a charge. Since, however, Smith's intake questionnaire is dated
October 13, 2016, while the dates she stated Miksch discriminated
against her were from September 2003 to September 2011, the EEOC
did not give her incorrect information because the dates she
alleged the discrimination occurred were well before the 300-day
period for filing an EEOC charge. Because Smith does not allege
that the EEOC gave her any incorrect information with respect to
the proper time for filing her charge, this basis for equitable
tolling does not apply in this case. Smith's Title VII discrimi-
nation claims are therefore time-barred for failure to exhaust
administrative remedies.

_____

[65]Plaintiff's Response, Docket Entry No. 39, p. 20.

**C. SISD is Entitled to Summary Judgment on Smith's FMLA Claims for Retaliatory Termination and Denial of Sick Bank Leave**

Smith has asserted FMLA claims for retaliatory termination and retaliatory denial of sick bank leave.[66] Smith alleges:

48. Smith was eligible for and took a qualifying leave of absence under the FMLA.

49. SISD denied her restoration to the same or equivalent position as prescribed in the FMLA.

50. Smith's termination upon her return from FMLA leave was in retaliation for her having taken this leave. 29 U.S.C. § 2615(a)(2). There is close temporal proximity to Smith's FMLA leave and the decision to terminate her employment. Further, she was denied sick bank leave in retaliation for her having taken FMLA leave.[67]

SISD argues that it is entitled to summary judgment on plaintiff's FMLA retaliatory termination claim because Smith cannot establish a prima facie case under the FMLA, and because SISD had a valid non-retaliatory reason for terminating Smith's employment, i.e., Smith failed to comply with SISD's policy requiring her to provide a physician's statement indicating that she was fit for the resumption of regular duties following her FMLA leave.[68] Although SISD seeks summary judgment on all of Smith's claims, SISD had not made any different or additional argument in support of its motion for summary judgment on Smith's FMLA claim for denial of sick bank

---

[66]Plaintiff's Amended Complaint, Docket Entry No. 14, p. 10.

[67]Id. at 11 ¶¶ 48-50.  <u>See also</u> Plaintiff's Response, Docket Entry No. 39, pp. 28-29.

[68]Defendant's MSJ, Docket Entry No. 35, pp. 16-17 ¶¶ 46-52.

leave. Citing <u>Tapia v. Michaels Stores, Inc.</u>, 553 F. Supp. 2d 708, 715 (W.D. Tex. 2008), Smith responds that "[t]he summary judgment record contains sufficient evidence of pretext and/or that Smith's absence was a motivating factor in Defendant's denial of her request for sick leave, a leave of absence, and the termination of her employment to warrant denial of summary judgment."[69]

    1.   <u>Applicable Law</u>

The FMLA allows eligible employees working for covered employers to take temporary leave for medical reasons without risk of losing their employment. <u>See</u> 29 U.S.C. § 2601(b).[70] It also contains a provision protecting employees from retaliation or discrimination for exercising FMLA rights. <u>Mauder v. Metropolitan Transit Authority of Harris County, Texas</u>, 446 F.3d 574, 580 (5th Cir. 2006). "The Fifth Circuit applies the <u>McDonnell Douglas</u> framework to analyze retaliation claims under the FMLA, noting that 'there is no significant difference between such claims under the FMLA and similar claims under other anti-discrimination laws.'" <u>Hunt v. Rapides Healthcare System, LLC</u>, 277 F.3d 757, 768 (5th Cir. 2001). Therefore, in order to establish a prima facie case of

---

[69]Plaintiff's Response, Docket Entry No. 39, p. 29.

[70]The FMLA applies to private-sector employers with fifty or more employees. 29 U.S.C. § 2611(4)(A)(i). An employee who has worked for a covered employer for at least 1250 hours during the preceding twelve months is eligible for FMLA leave. 29 U.S.C. § 2611(2)(A). SISD does not dispute either that it is a covered employer or that Smith was eligible for FMLA leave.

retaliation Smith must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) the adverse decision was made because she took leave to which she was entitled under the FMLA. Id. Once she establishes a prima facie case the burden shifts to SISD to articulate a legitimate non-retaliatory reason for its employment actions. Id. Thereafter, the burden shifts back to Smith to "adduce evidence that would permit a reasonable trier [of] fact to find that the proffered reason is a pretext for retaliation." Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 684 (5th Cir. 2001). This requires Smith to demonstrate that the adverse employment actions would not have occurred "but for" the protected activity. Id.

### 2. Application of the Law to the Undisputed Facts

Smith has satisfied the first two elements of her prima facie case for her FMLA retaliation claims: She was protected under the FMLA and suffered adverse employment actions, i.e., termination (or failure to renew her employment contract) and denial of her application for sick bank leave. At issue is whether Smith has cited evidence capable of establishing that SISD made the adverse employment decisions because she sought protection under the FMLA. This causal link element is "established when the evidence demonstrates that 'the employer's decision[s were] . . . based in part on knowledge of the employee's protected activity.'" Medina, 238 F.3d at 684. SISD argues that Smith "fails to show any

evidence that her termination was due to her taking FMLA leave. On the contrary, Smith acknowledges that her leave expired on April 8, 2016, and that <u>she could not return to work</u> upon the expiration of her leave."[71]

In response Smith recites the elements of a prima facie case, but fails to cite any evidence capable of establishing that SISD made the adverse employment decisions about which she complains because she took FMLA leave.[72] Instead, Smith merely asserts that "[t]he summary judgment record contains sufficient evidence of pretext and/or that Smith's absence was a motivating factor in Defendant's denial of her request for sick leave, a leave of absence, and the termination of her employment to warrant denial of summary judgment."[73] To avoid summary judgment Smith had to present evidence from which a reasonable fact-finder could conclude that SISD would not have denied her application for sick bank leave and would not have terminated her employment had she not exercised her FMLA rights.

The summary judgment evidence shows that Smith took FMLA leave due to her own serious illness -- Multiple Sclerosis -- and that upon expiration of her FMLA leave Smith could not perform the

---

[71]Defendant's MSJ, Docket Entry No. 35, p. 16 ¶ 48.

[72]Plaintiff's Response, Docket Entry No. 39, p. 28.

[73]<u>Id.</u> at 29.

essential functions of her position and sought as a reasonable accommodation under the ADA a six-week extension of unpaid leave. Smith does not allege that her condition improved or changed during the time she was on FMLA leave, or at anytime thereafter. To the contrary, Smith does not dispute and in fact testified at her deposition that she was unable to provide SISD a doctor's statement of fitness for work and that she applied for Social Security disability benefits asserting that she was unable to work. The evidence adduced in this case is not sufficient to defeat SISD's motion for summary judgment on Smith's FMLA retaliation claims because no reasonable fact-finder could conclude from this evidence that SISD denied Smith's application for sick bank leave or terminated her employment in retaliation for having exercised her FMLA rights. Accordingly, the court concludes that SISD is entitled to summary judgment on Smith's FMLA claims for retaliatory termination and denial of sick bank leave.

## IV. Conclusions and Order

For the reasons stated in § III.A, above, the court concludes that SISD is entitled to summary judgment on Smith's claims for violation of the ADA; for the reasons stated in § III.B, above, the court concludes that SISD is entitled to summary judgment on Smith's claims for violation of Title VII; and for the reasons stated in § III.C, above, the court concludes that SISD is entitled

to summary judgment on Smith's claims for violation of the FMLA. Accordingly, Defendant Sweeny ISD's Motion for Summary Judgment (Docket Entry No. 35) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 29th day of October, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE